AERO AUTO PARTS, INC., Appellant, v. STATE DEPARTMENT OF TRANSPORTATION, Respondent.

*No. 75–369. Argued May 2, 1977.—Decided June 1, 1977.*
(Also reported in 253 N.W.2d 896.)

236

For the appellant there was a brief by *Kelley, Weber & Bolte, S. C.* and oral argument by *Richard Bolte,* all of Wausau.

For the respondent the cause was argued by *Michael E. Perino,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

HANLEY, J. The following issue is presented on appeal:

Is a tenant, under sec. 32.19 (1), Stats. (1967), entitled to recover the cost of realigning personal property on the same site in a partial taking in eminent domain proceedings?

The plaintiff's claim for compensation is based upon sec. 32.19 (1), Stats. (1967), which was in effect at the time of the taking in this case. Sec. 32.19 of the statutes was repealed and recreated in chapter 409, Laws of 1969. In rewriting the section, the legislature chose to

utilize a statutory framework significantly different from that of the repealed section. Therefore, the statute upon which this case is brought is no longer in existence, and the interpretation of it will be of limited precedential value.

Sec. 32.19 (1), Stats. (1967) provided:

"32.19 *Additional items payable.* The following items shall be compensable in eminent domain proceedings where shown to exist:

"(1) Realignment of personal property. The cost of realigning personal property on the same site in partial takings or where realignment is required by reason of elimination or restriction of existing used rights of access."

The plaintiff contends that sec. 32.19 (1) is clear and unambiguous, providing compensation for the realignment of personal property required by a partial taking. Therefore, it argues, the trial court improperly resorted to judicial construction of the statute to determine that the legislature did not intend to authorize compensation to tenants for realignment of personal property required by a partial taking.

The respondent state, on the other hand, contends that judicial construction is proper in this case, because the statutory section does not designate to whom this cost is compensable and is therefore ambiguous.

In *National Amusement Co. v. Department of Revenue,* 41 Wis.2d 261, 267, 163 N.W.2d 625 (1969), this court stated:

"This court has consistently used the same test for ambiguity:

" 'A statute or portion thereof is ambiguous when it is capable of being understood by reasonably well-informed persons in either of two or more senses.' *State ex rel. Neelen v. Lucas* (1964), 24 Wis.2d 262, 267, 128 N.W.2d 425, citing *State ex rel. West Allis v. Dieringer* (1957), 275 Wis. 208, 218, 81 N.W.2d 533.

"Whenever a case such as this one is before the court, however, it is obvious that people disagree as to the meaning to be given to a statute. This alone cannot be controlling. The court should look to the language of the statute itself to determine if 'well-informed persons' *should have* become confused."

A statutory subsection may not be considered in a vacuum, but must be considered in reference to the statute as a whole and in reference to statutes dealing with the same general subject matter. *Student Ass'n of University of Wisconsin-Milwaukee v. Baum,* 74 Wis.2d 283, 291, 246 N.W.2d 622 (1976); *Omernik v. State,* 64 Wis.2d 6, 12, 218 N.W.2d 734 (1974); 2A Sutherland, *Statutory Construction* §46.05 (4th ed. 1973).

In light of prior law of eminent domain respecting costs of moving personal property, reference in general to chapter 32, Stats. (1967), and especially to the balance of sec. 32.19, reveals the ambiguity, perhaps latent, in subsec. 32.19(1).

Prior to 1959, there was no statute which enumerated particular items of damage for which compensation could be awarded in eminent domain proceedings. It was the prevailing rule in Wisconsin that expenses of removing personal property could not be considered in estimating compensation for the taking of land by condemnation. *Fiorini v. City of Kenosha,* 208 Wis. 496, 498–99, 243 N.W. 761 (1932). The general rule among the states then and today is that, in the absence of statutory authorization, neither the owner in fee nor a tenant is entitled to recover the cost of removing personal property from land taken by condemnation. 4A Nichols, *Eminent Domain* §14.2471[2] (rev. 3d ed. 1976); 27 Am. Jur.2d *Eminent Domain* §§293, 354 (1966).

Sec. 32.19(1) (1967) simply states that the costs of realigning personal property is compensable. This broad

authorization, on its face, would seem to permit compensation regardless of whose property was realigned. However, chapter 32 (1967), providing the statutory scheme by which the constitutional mandate for just compensation was implemented, was completely orientated toward the rights of an owner in fee. Note, 1966 Wis. L. Rev. 1215. In some of the statutory sections it appears the legislature might have desired to limit compensation for items to the owner. For example, sec. 32.09(7), Stats. (1967), which dealt with compensation in partial takings, stated: "In addition to the amount of compensation paid pursuant to sub. (6), *the owner* shall be paid for the items provided for in sec. 32.19, if shown to exist. . . ." (Emphasis added.) Moreover, in some of the other subsections of sec. 32.19 (1967), the legislature specified that the compensation thereunder was for a cost incurred by a particular person. Sub. (2) of sec. 32.19 (1967) was similar to sub. (1) in that it allowed compensation for the cost of moving personal property, but under this subsection it was specified to whom this cost is compensable. Sub. (2) provided compensation for "[t]he cost of removal from the property taken to another site of personal property of land owners, or tenants under an unexpired written lease, the full term of which is at least 3 years."

Therefore, since the statute simply states that moving costs are compensable, but there are other factors in the law of eminent domain and other portions of the statutes which could lead to the conclusion that such costs are only compensable for the removal of the owner's property, this is a situation where any "reasonably well-informed" person should be confused as to who may receive such compensation. Both the parties' interpretations of sec. 32.19(1) (1967) are reasonable. The statute is ambiguous, and judicial construction is therefore ap-

propriate. *Student Ass'n of University of Wisconsin-Milwaukee v. Baum, supra* at 291; *State ex rel. Klingler & Schilling v. Baird,* 56 Wis.2d 460, 465, 202 N.W.2d 31 (1972).

Under the circumstances of the instant case, the statute is to be liberally construed. In the leading treatise on the subject it is stated:

"The rule of strict construction applies to the power of the condemnor and to the exercise of such power. It is a rule intended for the benefit of the owner who is deprived of his property against his will. It follows, therefore, that the converse of this rule is also true. Statutory provisions in favor of an owner, such as provisions regulating the remedies of such owner and the compensation to be paid to him, are to be liberally construed." 1 Nichols, *Eminent Domain* §3.213[4] (rev. 3d ed. 1976); *See Lenz v. Chicago & Northwestern Railway Co.,* 111 Wis. 198, 206, 86 N.W. 607 (1901).

In determining the legislature's intent, the court examines the statutory language in relation to its scope, history, context, subject matter, and the object intended to be accomplished. *State Medical Society of Wisconsin v. Commissioner of Insurance,* 70 Wis.2d 144, 155, 233 N.W.2d 470 (1975).

Sec. 32.19 (1967) was enacted in 1961, but its provisions actually originated in the 1959 enactment of sec. 32.09.

In chapter 639, Laws of 1959, the legislature repealed and recreated all of chapter 32, Stats. In sec. 32.09 of that new chapter, the rules governing determination of just compensation were set forth. Sec. 32.09(5) (1959) enumerated several items of damage for which compensation might be awarded. Subs. 32.09(5)(f), (k), (l), (m), and (n) provided for five items of compensation, which were later removed from sec. 32.09 (1959) and

placed in a new sec. 32.19, which is the subject we are concerned with here, enacted by the Laws of 1961, ch. 486, sec. 18. The only substantial difference between these five items as provided for in sec. 32.09 (5) (1959) and as provided for in sec. 32.19 (1967) was that under sec. 32.19 (2) (1967), compensation was allowed for the cost of removal to another site of personal property of both the landowner and tenants with a three year lease, while under the previous sec. 32.09 (5) (k) (1959), such compensation was only authorized for the removal of the landowner's personal property.

A note following sec. 32.09 in Amendment No. 9 to 1959 Assembly Bill No. 483, which created sec. 32.09 (1959), states in part:

"NOTE: This new s. 32.19 has been created to cover 5 items of just compensation removed from items previously enumerated in s. 32.09. The items enumerated in this section were recognized by the 1959 legislature as items of loss which may or may not be imposed on a *property owner, whose land is taken.* He should be paid for such losses but in the first operative year under the new law it has been found difficult to appraise these items of damage in advance. It is much easier to prove the loss after the fact of its occurrence. This new statute gives the *landowner* a right to compensation for any of these items if shown to exist. . . ." (Emphasis added.)

The above notes describing sec. 32.09 enacted in 1959, and sec. 32.19 enacted in 1961, refer exclusively to the rights of compensation conferred upon the "property owner" or the "landowner" and thus indicate that the legislature did not contemplate authorizing such compensation for lessees.

These indications of legislative intent, however, must be considered in light of the method and procedures of determining just compensation. "[T]his court has held that the proper method of fixing the damages to each estate or interest is to determine the total damages in a

single award. The apportionment of the award is not a matter for the appraiser or appraisers but it must be determined in some proper proceeding instituted by the parties interested in the award." *State Highway Comm. v. Grant,* 7 Wis.2d 308, 312–313, 96 N.W.2d 346 (1959); *Fiorini v. Kenosha, supra* at 500. All the lessee's damages are included in the general award to the owner, who receives it for all interested parties. Therefore, the legislative statement that the section enumerates the items to which the owner has a right of compensation does not necessarily mean that none of those items are properly due to a lessee whose leasehold is taken.

At the time sec. 32.19 was created in 1961, sec. 32.09 was amended to make reference to that new section in order to incorporate the items in sec. 32.19 within the rules of sec. 32.09 for determination of just compensation. Sub. (5) of the new sec. 32.09 stated: "In the case of a total taking the condemnor shall pay the fair market value of the property taken and shall be liable for the items in sec. 32.19 if shown to exist." Sub. (7), which applied when there was a partial taking, stated: "In addition to the amount of compensation paid pursuant to sub. (6), *the owner* shall be paid for items provided for in s. 32.19, if shown to exist. . . . " (Emphasis added.) Sub. (5) thus did not limit the items of compensation in sec. 32.19 (1967) to specified persons, but only states the condemnor shall be liable for them. Similarly, sub. (7) does not limit the compensation for the items in sec. 32.19 (1967) to those incurred by the owner, but only states that the owner shall be paid for those items, regardless to whom the compensation may be ultimately due. These two references essentially amount to a general statement that when condemnation takes place, the condemnor shall be liable for the items of compensation provided in sec. 32.19 (1967). Such a general statement

does not limit compensation to only those costs incurred by the owner.

Sec. 32.19 (1967) allowed five items of compensation in eminent domain proceedings. Only in subs. (2) and (3) did the legislature state by whom the particular cost must be incurred to be compensable. Sub. (2) allowed compensation for the "cost of removal from the property taken to another site of personal property *of landowners, or tenants* under an existing unexpired written lease, the full term of which is at least 3 years." (Emphasis added.) Sub. (3), allowing compensation for the costs of refinancing the purchase of another property, permitted compensation for only such cost "incurred by the owner."

In none of the three remaining subsections—sub. (1) (costs of realignment of personal property on same site in partial taking), sub. (4) (rental losses caused by the taking), and sub. (5) (expenses incurred for plans designed specifically for the property and rendered un- usable because of the taking)—did the legislature specify to whom the item is compensable. Although the state asserts that subs. (4) and (5) "clearly relate only to owners," we do not agree because situations may arise where a tenant whose leasehold interest is taken would lose rents under subleases or incur expenses for plans rendered unusable because of the taking.

It is difficult to identify a pattern within sec. 32.19 (1967) as to the use of the words "owner" or "tenant." The state argues that if the legislature intended both tenants and owners to receive compensation for the items in sec. 32.19 (1967) where no specification was made, as in sub. (1), then the use of the words "owner" and "tenant" in sub. (2) would be superfluous. This is not necessarily so, for in sub. (2) the use of those words could have been necessitated by the legislature's desire to limit compensation for removal costs of tenants "under an existing, unexpired written lease, the full term of which is at least 3 years." Furthermore, under the state's

interpretation—that where no person is specified only the owner may be compensated for the particular item—the specification in sub. (3) that only the owner's cost of refinancing may be recovered would have been unnecessary.

We think that if any implication may be drawn from the statutory language of sec. 32.19 (1967) itself, that implication comes from the specification in sub. (2) of owners and tenants with an unexpired existing three year lease and in sub. (3) of owners as persons who shall be entitled to the particular compensation under those subsections. Because the legislature found it necessary to specify in those subsections, the implication is that in the absence of a specification, the item of cost is compensable regardless of who incurred it.

This implication may also be drawn from the original sec. 32.09, enacted in 1959, from which the items in sec. 32.19 were taken. Fourteen items of compensation were enumerated under sub. (5) of sec. 32.09. As to only two of these items did the legislature limit compensation to a cost incurred by a particular person, in both cases the owner. Under sub. (5) (k), compensation for the cost of removal of personal property to another site was limited to only the cost of removal of the landowner's personal property. Under sub. (5) (1) only the owner's cost of refinancing was allowed. No specification is made as to any other item, and thus the implication is that those remaining items are compensable regardless of who incurs the particular cost. Why would the legislature specify in sec. 32.09 (5) (k) that only the landowner's cost of removal of personal property could be compensated, but not to specify in sec. 32.09 (5) (f) as to the cost of realigning personal property on the same site in a partial taking if it desired to also limit that item to the cost of the owner? It is only logical to construe this section to mean that where no specification is made, none was intended, and the item is compensable without regard to who incurred it.

We conclude that the meaning of sec. 32.19 (1) (1967) may be determined by resort to the structure of that section, in light of the rule that statutes providing compensation for condemnees are to be liberally construed. In sub. (1) of sec. 32.19 (1967) the legislature made no limitation upon who may recover the cost for realignment of personal property. In other subsections such limitations were made. Had the legislature intended that sub. (1) only apply to the personal property of an owner it would have also in sub. (1) so specified. Therefore the demurrer should have been overruled. The trial court's order sustaining the demurrer is overruled and the cause remanded for further proceedings.

*By the Court.*—Order reversed and cause remanded.