Richard G. Pool, Plaintiff-Appellant,

v.

City of Sheboygan, Defendant-Respondent.†

Court of Appeals

*No. 2005AP2028. Submitted on briefs December 8, 2005.*
*—Decided May 3, 2006.*

2006 WI App 122

(Also reported in 719 N.W.2d 792.)

† Petition to review granted 7-25-06.

725

On behalf of the plaintiff-appellant, the cause was submitted on the brief of *Shawn Brock* of *Holbrook, Wurtz, Roth, Basler & Brock, LLP* of Sheboygan.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Stephen G. McLean*, city attorney.

Before Snyder, P.J., Brown and Anderson, JJ.

¶ 1. BROWN, J. WISCONSIN STAT. § 893.80(1g) (2003–04)[1] deals in part with how a governmental entity serves a notice of disallowance of a claim to a person who has filed a claim against it. This statute expressly states that a notice of disallowance must be served *on the claimant* by registered or certified mail. The statute is plain on its face, and there are policy reasons why we should hold governmental entities to strict compliance. Here, the notice of disallowance was served on the claimant's daughter. We hold that this will not do and reverse the circuit court's holding that strict compliance with the statute is unnecessary so long as the claimant had actual notice of the disallowance.

## BACKGROUND

¶ 2. Richard G. Pool's residence is located on property that abuts State Highway 28/South Business Drive (Highway 28) in Sheboygan.[2] When Pool purchased the property, it included a privacy fence running parallel to Highway 28. On January 7, 2002, the City of Sheboygan advised Pool that he must remove the fence because of a planned project to widen Highway 28. On or about May 21, 2003, despite numerous objections by Pool, the City removed Pool's fence. Pool sought compensation from the City, but was denied. In November 2003, the City installed a sidewalk where the fence once stood. Pool continued to express his objections to the City.

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

[2] The record includes documents that refer to South Business Drive as State Highway 28, Highway 141, and Business Highway 42. Because Pool refers to Highway 28 in his appellate brief, and the City makes no objection, we accept that the roadway in question is Highway 28/South Business Drive in the City of Sheboygan.

727

¶ 3. On May 25, 2004, Pool filed a notice of claim and claim, alleging inverse condemnation without compensation. Pool alleged that the City's removal of the fence resulted in a "substantial decrease in the property's value, as well as a permanent and substantial interference with the use and enjoyment of his land." He sought compensation in the amount of $65,000.

¶ 4. On September 8, 2004, the City sent a notice by certified mail to Pool, disallowing Pool's claim and advising him of the six-month statute of limitations for bringing a lawsuit on the claim. However, the City did not check the box on the certified mail receipt indicating "restricted delivery." On September 9, 2004, Pool's adult daughter, Tamara Pool, received the notice of disallowance and signed the certified mail receipt of service.

¶ 5. On March 22, 2005, Pool filed a petition for ascertainment of compensation against the City. The City moved to dismiss the petition because it was untimely under WIS. STAT. § 893.80(1g), which states in pertinent part, "No action on a claim under this section . . . may be brought after 6 months from the date of service of the notice of disallowance." Following a hearing on June 3, the circuit court granted the City's motion to dismiss. The circuit court opined that it was "quite troubling and probably ill-advised for the City not to check the box that says restricted delivery because the statute clearly says complainant should be served" but went on to hold that Pool had "actual notice" of the notice of disallowance. The circuit court concluded that this was sufficient to satisfy the requirements of § 893.80(1g) and trigger the six-month limitation period. Pool appeals.

## DISCUSSION

¶ 6. Pool contends that the six-month limitation period was never triggered because the City did not satisfy the requirements of Wis. Stat. § 893.80(1g). He presents two primary contentions to demonstrate that the City's notice of disallowance was deficient: (1) the notice of disallowance was not "served on the claimant" but rather was served on Pool's daughter and (2) the certified mail receipt was not "signed by the claimant" as required by § 893.80(1g). We need only address the first contention. *See Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663 (1938) (only dispositive issues need be addressed).

¶ 7. The City appears to argue that even if service was not made "on the claimant" from a technical standpoint, the facts demonstrating "actual notice" are sufficient for purposes of Wis. Stat. § 893.80(1g). Specifically, the City points to the following undisputed facts: the certified letter was properly addressed to Pool at his residence, proper postage was affixed prior to sending, Pool's adult daughter signed the receipt, and Pool's daughter checked the box marked "agent" when she accepted the letter. Most importantly, the City argues, Pool admits that he received the notice.

■■■

¶ 8. The issue is one of statutory interpretation and application; as such, it raises a question of law that we review de novo. *See Cary v. City of Madison*, 203 Wis. 2d 261, 264, 551 N.W.2d 596 (Ct. App. 1996). When interpreting a statute, the sole purpose is to determine legislative intent. *Id.* If the statute is clear on its face, our inquiry into the legislative intent ends and we simply apply the statute to the facts of the case. *Id.*

¶ 9. Accordingly, we turn to the language of the statute, which states in relevant part: "Notice of disallowance of the claim submitted under sub. (1) *shall* be served *on the claimant* by registered or certified mail and the receipt therefor, *signed by the claimant,* or the returned registered letter, *shall be proof of service.*" WIS. STAT. § 893.80(1g) (emphases added).

¶ 10. Pool argues that the City did not satisfy the requirements of WIS. STAT. § 893.80(1g) because the notice of disallowance was not served on Pool. We agree. When the legislature uses the word "shall" in a statute it is presumed to be mandatory. *Karow v. Milwaukee County Civil Serv. Comm'n,* 82 Wis. 2d 565, 570, 263 N.W.2d 214 (1978). Furthermore, in *Cary,* we stated that there was nothing unclear or ambiguous about the statute's requirement that notice of disallowance be served "on the claimant." *See, Cary,* 203 Wis. 2d at 264–65.[3] There, we held that the City of Madison did not comply with § 893.80(1)(b) when it served a notice of disallowance on Cary's attorney instead of on Cary, and we declined to relax the service requirements our legislature has explicitly mandated for notice-of-claim disallowances. *Id.* at 265, 268. Likewise, the notice of disallowance served on Pool's daughter is insufficient to comply with the statute because she is not the claimant. There is nothing unclear or open to interpretation in the statute's language that the notice of disallowance must be served on the claimant. *See Linstrom v. Christianson,* 161 Wis. 2d 635, 639, 469 N.W.2d 189 (Ct.

---

[3] At the time we decided *Cary v. City of Madison,* 203 Wis. 2d 261, 551 N.W.2d 596 (Ct. App. 1996), the relevant statutory language was located in WIS. STAT. § 893.80(1)(b).

App.1991) (notice-of-disallowance provisions of § 893.80(1)(b) are plain and unambiguous).[4]

¶ 11. We disagree with the City's contention that actual notice suffices even in light of the clear and unambiguous language of the statute. Again, *Cary* is instructive even though that case turned aside a "substantial compliance" argument and did not have before it the "actual notice" contention that we have here. Still, *Cary* rejected the idea that "substantial compliance" would suffice as an alternative to serving the claimant, not only because of the clear and unambiguous language of the statute but also for public policy reasons.

---

[4] The City claims that *Cary* is not authority for our holding because, there, the City of Madison sent its notice of disclaimer to the claimant's attorney at an address different from the claimant's address. Here, the City sent the notice to the correct address, the address of the claimant. The City argues that this makes all the difference. A close reading of *Cary* establishes, however, that it makes no difference.

The *Cary* court was not the least bit interested in *where* the notice was sent. True, it did discuss the fact that notice was sent to the attorney's address rather than the claimant's. *See Cary*, 203 Wis. 2d at 265–66. But this discussion was only in response to the City of Madison's argument that the law considers the attorney's address to be the equivalent of the claimant's address for purposes of the notice-of-claim statute, and therefore, service on the attorney must be considered the same as service on the claimant. *See id.* at 263, 265–66. The *Cary* court rejected that argument and held that the law relied upon by the City of Madison did not apply to WIS. STAT. § 893.80 disallowance-of-claim notices. *See Cary*, 203 Wis. 2d at 265–66. Rather, the *Cary* court considered the only real question to be whether it was the claimant who had received the notice. *See id.* at 266. The *Cary* court wrote that the "statutes are very different, and we do not consider service on an attorney to be the equivalent of the plainly worded requirement that the disallowance notice be served on the claimant." *Id.*

731

The *Cary* court explained that strict compliance was necessary to preserve bona fide claims. *Cary,* 203 Wis. 2d at 266–67. We hold that the same public policy rationale is true with respect to the "actual notice" assertion of the City here.

¶ 12. This public policy principle is so important that we take this opportunity to expand on it. In Wisconsin, a citizen cannot just go out and commence a lawsuit against a governmental entity. The citizen has hurdles he or she must meet. A citizen must first satisfy the notice-of-injury provision in WIS. STAT. § 893.80(1)(a), and after complying with that, must satisfy the notice-of-claim provision in § 893.80(1)(b). If both of these provisions are satisfied and the government rejects the claim, the citizen must begin suit within six months from the date of service of the notice of disallowance or be prevented from achieving redress in the courts. *See* § 893.80(1g). Time is therefore of the essence to the citizen during that six-month period.

¶ 13. Because legitimate claims can be thrown aside without redress when a claimant fails to follow the statutory requirements, strict compliance is required in how the government provides the notice of disallowance. *Cf. Driver v. Housing Auth. of Racine County,* 2006 WI App 42, ¶ 23, 289 Wis.2d 727, 713 N.W.2d 670 (Nos. 2005AP410 and 2005AP411) (strict compliance necessary because "actual notice" often difficult to determine in an individual case). Uniformity in the method of service for disallowing a claim is a burden a governmental entity can easily bear in order to make certain that the citizen's interest in timing is protected. Allowing "actual notice" or "substantial compliance" rationales to relax the requirement of the statute would essentially shift the burden to the citizen to prove that the notice given was insufficient for one reason or

732

another. *See id.* (claimant may face "insurmountable task" of proving lack of notice). Timing issues would become fact driven and credibility laced instead of merely documentary. *Cf. id.* The burden to send a notice of disallowance is an easy one for the government to satisfy if it just follows the statute. That easy burden should remain on the government lest bona fide claims of citizens get cast aside. *Cf. id.* This is especially true where property rights are at stake, as is the case here. *See id.* We are convinced that placing a strict accountability burden on the government to provide notice in accordance with the statute was the intent of the legislature. *See also id.*, ¶ 24 (relaxed standards invite noncompliance with statutory mandates).

¶ 14. Our understanding of the law in this regard is further bolstered by *Humphrey v. Elk Creek Lake Protection & Rehabilitation District*, 172 Wis. 2d 397, 403, 493 N.W.2d 241 (Ct. App. 1992). In *Humphrey*, five couples alleged that the Elk Creek Lake Protection and Rehabilitation District's negligence caused flood damage to their properties. *Id.* at 398–99. Each couple filed separately against the District, which denied all of the claims at a meeting on January 9, 1991. *Id.* at 399. Five notices of disallowances were served, one on each couple, but the language in each stated that the District had voted to disallow the claim made by Richard and Theresa Stone, only one of the couples. *Id.* at 399–400. Nonetheless, the notices listed all five couples as claimants and included a "cc" line copying each couple on the notice of disallowance. *Id.* at 399. The District claimed that the claimants other than the Stones were sufficiently on notice of their disallowed claims. *Id.* at 402. We disagreed, holding that the existence of a plaintiff's knowledge of disallowance does not relieve a municipal-

ity from the service requirements associated with a notice of disallowance. *See id.* at 403.

¶ 15. Of particular relevance to our public policy discussion, the *Humphrey* court recognized that the notice of disallowance triggers the six-month statute of limitations for the claimant to sue the government in court and, if that time period passed, the property owners would be left without the right to have the claim heard by a competent tribunal. *See id.* at 401–03. Because the fate of a person's property right depended so much on when the clock started ticking, the court felt constrained to interpret the statutes "to preserve a bona fide claim so that it may be passed upon by a competent tribunal rather than cut off without trial." *Id.* at 403. In our view, the *Humphrey* court believed it to be essential that the government do it one way, the way the statute requires, so as to relieve all doubt on the part of both the government and the claimants.

## CONCLUSION

¶ 16. We conclude that the City's notice of disallowance did not comply with the requirements of WIS. STAT. § 893.80(1g) and consequently, the six-month limitation period for Pool's claim against the City did not begin to run on September 9, 2004. The plain and unambiguous language of § 893.80(1g) required that the notice of disallowance be served on Pool. Accordingly, we reverse.[5]

---

[5] The concurrence argues that we should have addressed Pool's second argument, that a condition precedent to proper service of a notice of disallowance is a receipt signed by the claimant. We have concluded that it is unnecessary for us to reach this issue. Moreover, we have our doubts about the rationale of the concurrence. We note that the statute explains

*By the Court.*—Order reversed.

¶ 17. SNYDER, P.J. (*concurring in part; dissenting in part*). I concur in the mandate but not in the opinion's reasoning supporting the mandate. WISCONSIN STAT. § 893.80(1g) expressly states a "Notice of disallowance of the claim submitted under sub. (1) shall be served on the claimant by registered or certified mail." The City used certified mail to serve Pool. The majority opinion is correct in that the statute of limitations for Pool's claim was not triggered by the notice of disallowance and that the judgment must be reversed. However, the opinion does not fully, or correctly, address the reasons that service upon Pool failed to comply with § 893.80(1g).

¶ 18. Pool's primary appellate contentions are that: (1) the notice of disallowance was not "served on the claimant," but rather on Pool's daughter;[1] and (2) the certified mail receipt was not "signed by the claimant." The majority opinion only addresses Pool's contention that the notice of disallowance was not "served on the claimant," the first contention. However, the second contention, that a receipt was not signed by Pool, is key and controlling where certified mail is utilized under WIS. STAT. § 893.80(1g).

how a signed receipt *shall be proof of service*. It appears to us that the signed receipt is not a prerequisite for effective service but is, more simply, a legislative choice that the receipt be considered conclusive *proof* of the event. In other words, the signed receipt is conclusive evidence of service, not an element of service. We believe that the weakness in the concurrence is its failure to consider the term "proof of service."

[1] Pool's daughter, Tamara Pool, did not sign the Certified Mail Receipt (PS Form 3800) and there is no place to accomplish that task on that document. Tamara signed the Domestic Return Receipt (PS Form 3811, August 2001).

¶ 19. A statute shall be construed to give effect to every part of it. *Hahner v. Board of Educ. Wis. Rapids*, 89 Wis. 2d 180, 189, 278 N.W.2d 474 (Ct. App. 1979). A statute must be construed in light of its purpose. *Wisconsin's Envtl. Decade, Inc. v. PSC*, 84 Wis. 2d 504, 518, 267 N.W.2d 609 (1978). The crucial difference between registered and certified mail is that the user of registered mail must be given a receipt upon which a postmark appears. *Patterson v. Board of Regents*, 103 Wis. 2d 358, 359, 309 N.W.2d 3 (Ct. App. 1981). A receipt is optional when certified mail is used. *Id.*

¶ 20. Here, the general rule of statutory construction concerning the use of certified and registered mail in Wis. Stat. § 990.001(13) is instructive, reading in relevant part:

> [W]henever the statutes authorize . . . the use of registered mail, *and do not require receipt of the addressee only,* certified mail may be used if a sender's receipt is obtained from the postal authorities and return receipt is requested. *If a return receipt signed by an addressee only is required, registered mail must be used.* (Emphasis added.)

¶ 21. Wisconsin Stat. § 893.80(1g) requires the signed receipt of the claimant[2] only and, therefore, would normally require that Pool's disallowance notice be sent by registered mail in compliance with Wis. Stat. § 990.001(13). However, construing § 893.80(1g) in that manner would produce a result inconsistent with the manifest intent of the legislature to authorize the use of certified mail. The legislature required, however, that when certified mail is used under § 893.80(1g) that the

---

[2] Wisconsin Stat. § 893.80(1g) uses the term "claimant" while the postal documents refer to "addressee." For purposes of this appeal, the terms are interchangeable.

notice "shall be served *on the claimant . . .* and *the receipt therefor, signed by the claimant . . .* shall be proof of service." *Id.* (Emphasis added). The second requirement, that the receipt be signed by the claimant, assures that the § 893.80(1g) use of certified mail is consistent with the legislative concern expressed in the last sentence of § 990.001(13). In other words, in the context of service by certified mail the requirement that the receipt for the notice of disallowance be signed by the claimant excepts the required use of registered mail required under § 990.001(13). With this in mind, we can turn to the procedure used here to serve the notice of disallowance upon Pool.

¶ 22. Certified mail requires the use of PS Form 3800, the Certified Mail Receipt (CMR), and paying a fee of $2.40.[3] The CMR does not require that a recipient sign for the mail. Even if the claimant directly receives the mail, the CMR itself will not satisfy the WIS. STAT. § 893.80(1g) requirement that a signed receipt be obtained from the claimant.

¶ 23. The City requested that a delivery receipt be obtained at the designated address on the CMR by using PS Form 3811, Return Receipt Requested (RRR), and paying an additional fee of $1.85. A receipt for the certified mail would have sufficed had it been signed by Pool. It was not. It was signed by his daughter as his agent.[4] Compliance with the RRR may be by an agent, as was the case here, or the claimant. If WIS. STAT.

---

[3] Information relating to current U.S. Postal Service charges can be verified by any postal clerk at any Wisconsin post office or at *www.usps.com.*

[4] Pool disputes that Tamara was authorized to act as his agent. Because we have determined that service was not accomplished, the agency issue is not addressed.

§ 893.80(1g) did not contain the additional requirement that the receipt be signed by the claimant, I would agree with the City that proper service was obtained upon Pool as the claimant at this point by certified mail. It is for that reason that the return of the receipt signed by the claimant, rather that service upon the claimant, is the controlling issue of law in this appeal.

¶ 24. The City could have insured compliance with WIS. STAT. § 893.80(1g) by requesting in the RRR that the certified mail be served upon Pool only by checking item 4 (Restricted Delivery), "Yes," and paying an additional fee of $3.70. This appeal, unfortunately, is about that $3.70.

¶ 25. While I concur that the reversal of the judgment is warranted, I must also conclude that the opinion fails to fully and properly analyze the appellate issues presented. In order to avoid future problems of this nature, it is highly recommended that the government entity spend the additional $3.70 to conform to the legislative intent as expressed in WIS. STAT. §§ 893.80(1g) and 990.001(13).